Nathaniel K. Charny, Esq.
**CHARNY & WHEELER P.C.**
9 West Market Street
Rhinebeck, New York 12572
Telephone: (845) 876-7500
Facsimile: (845) 876-7501
ncharny@charnywheeler.com

Megan S. Goddard, Esq. (*Pro Hac Vice* Pending)
**GODDARD LAW PLLC**
39 Broadway, Suite 1540
New York, New York 10006
Telephone: (646) 504-8363
Facsimile: (212) 473-8705
Megan@goddardlawnyc.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JULIE ANN KREUGER SKJOLAAS, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | *Jury Trial Demanded* |
| | ) | |
| NOVO NORDISK INC. | ) | |
| and BENJAMIN YOUNG, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF JULIE ANN KRUEGER SKJOLAAS, by her attorneys Charny & Wheeler P.C., whose offices are located at 9 West Market Street, Rhinebeck, New York 12572, and Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This charge is brought on behalf of Plaintiff Julie Ann Kreuger Skjolaas (hereinafter "Plaintiff") against Defendants Defendant Novo Nordisk, Inc. ("Defendant Novo Nordisk") and Benjamin Young (hereinafter "Defendant Young") for violations of Title VII, the Equal Pay Act ("EPA"), New Jersey Law Against Discrimination ("NJLAD"), and the Louisiana Employment Discrimination Law ("LEDL"). As a woman, Plaintiff was held to a different standard in promotions, compensation, discipline and the perquisites of employment. Under the leadership of Defendant Young, Defendant Novo Nordisk fostered a sexist work culture that favored males and routinely licensed demeaning, sexist comments and expectations about women. Though she formally complained and sought exit paths through promotion, Defendant Novo Nordisk took no remedial action on Plaintiff's complaints. They disciplined her, investigated her for trumped-up charges, undercompensated her and allowed her career to flounder until she had no choice but to resign.

## THE PARTIES

2.      Plaintiff is a female who currently resides in New Orleans, LA, where her home office was located, and who was formerly employed by Defendant Novo Nordisk.

3.      Upon information and belief, at all times herein, Defendant Novo Nordisk is a multinational pharmaceutical company. Defendant Novo Nordisk's North American headquarters are located at 800 Scudders Mill Road, Plainsboro, New Jersey 08536, and trainings and in-person meetings take place there.

4.      Defendant Young is a senior Regional Business Director of the Mississippi Valley Region (MSV) at Defendant Novo Nordisk and was Plaintiff's supervisor from 2010 until her resignation.

2

5.      Defendant Novo Nordisk was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws.

6.      Plaintiff was, at all times relevant herein, Defendant Novo Nordisk's "employee" within the meaning of all relevant Federal, State and local laws.

## JURISDICTION

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1332 and § 1367 for civil actions arising under the laws of the United States, diversity jurisdiction and supplemental jurisdiction.

8.      All conditions precedent to filing the instant action have been fulfilled. On or about September 3, 2020, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New Jersey Division on Civil Rights and the Louisiana Commission on Human Rights. On November 30, 2020, the EEOC issued Plaintiff a Notice of Right to Sue, and this action is being brought within 90 days of Plaintiff's receipt of her Notice of Right to Sue.

## VENUE

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claim occurred in the District of New Jersey and because Defendant Novo Nordisk resides in the District of New Jersey.

## FACTUAL BACKGROUND

### Plaintiff Flourishes in Pharmaceutical Sales

10.     Plaintiff was raised on a modest dairy farm in the Midwest and worked her way through the University of Wisconsin-Madison. Since 1998, Plaintiff has been in the

pharmaceutical sales industry. Prior to joining Defendant Novo Nordisk, she worked at Watson Laboratories and Takeda Pharmaceuticals, both reputable pharmaceutical companies.

11.     In 2004, Plaintiff was hired by Defendant Novo Nordisk as a Diabetes Care Specialist and quickly rose up the ladder. She was promoted to Regional Field Trainer in 2005 and District Business Manager 1 in 2007. In these roles, she coached teams of pharmaceutical sales representatives who promoted Defendant Novo Nordisk treatments to medical providers. In 2009, she won the Accountability, Collaboration, Execution Award for the nation as well as her area and in 2011, she won the Regional Vision Award for leadership in the Mississippi Valley Region.

12.     In 2011, while her promotion to District Business Manager II was in process, Defendant Young became Plaintiff's new manager.

### Defendant Young Derails Plaintiff's Upward Career Trajectory

13.     Plaintiff's skyrocketing career came to a halt under Defendant Young. He harbored backwards biases about what women were capable of, what positions they hold, and their innate disposition. Defendant Young expected women to flirt with him in order to get ahead and held it against Plaintiff when she refused.

14.     Defendant Young's sexist views corrupted his ability to supervise Plaintiff's work product and nurture her career growth.

15.     Women who worked in proximity to Defendant Young at Defendant Novo Nordisk were told that if they wanted to work with Defendant Young, they had to flirt with him. Upon information and belief, he made it clear that he liked women to hang on his every word and to fawn over him.  It was widely understood, and accepted at Defendant Novo Nordisk, as evidenced by the face that, upon information and belief, female employees were told, "If you want to do well with [Defendant Young], you need to flirt."

16.     Upon information and belief, he encouraged female employees to sit close to him at work dinners, to read his menu for him and touch him. He shared alcoholic drinks from the same glass and split desserts off the same plate during work outings and was also very demonstrably physical with them. Women who endured Defendant Young's behavior had better working relationships with Defendant Young then women who refused to "play along." These public interactions made staff uncomfortable and sent a clear message about the kind of behavior that Defendant Young demanded from female employees.

17.     After 2015, Plaintiff was one of two women that worked on a team of ten people reporting to Defendant Young. At the time that he became her manager, she was the most tenured Novo Nordisk manager on his team.

18.     Immediately after he became her manager, Defendant Young insultingly asked Plaintiff if she had "Daddy issues." Plaintiff was shocked into silence by the misogynistic comment.  Upon information and belief, Defendant Young never asked male employees if they had "Daddy Issues."  It also soon became clear that Defendant Young preferred to promote and work with men and that he favored the male members of his team.

19.     Plaintiff quickly noted-and began voicing her concerns about-the lack of area and national opportunities for professional exposure. Defendant Young never selected Plaintiff for any national or area committees or opportunities.

20.     Plaintiff, realizing that she would have to go around Defendant Young, continued to find a way to thrive in her role despite Defendant Young's blatant misogyny. She secured a position as Cross Channel District Business Manager in 2015 because a third-party vendor placed her in that position, with no input from Defendant Young.

5

21.     Defendant Young, apparently infuriated by her career advancement, sought to sabotage Plaintiff's success. On July 29, 2015, he casually informed her that he suspected that two of her male subordinates had a "problem" with her because she is a "female boss." Defendant Young made it clear that he believed that SHE was the cause of the problem by repeatedly siding with two male employees who rejected her leadership because "they didn't want to be managed by a woman."

22.     In spite of "suspecting" that sexism was at play, Defendant Young blamed Plaintiff for how her subordinates treated her. He scolded her by saying, "Can't you just get along with them?" Defendant Young directed her to "clear her lens" when coaching them and made it clear that he expected her to ignore the fact that they did not respect her because of her sex.

23.     During July 2015, Plaintiff applied for the Regional Account Manager position and as customary at Defendant Novo Nordisk, she requested an endorsement from Defendant Young. Upon information and belief, he did not provide an endorsement, or did not provide a helpful endorsement.

24.     Ultimately, Defendant Novo Nordisk chose a man for the position instead of Plaintiff, even though he had no experience selling in the Louisiana market, no industry management experience, no pharmaceutical training experience, and limited pharmaceutical sales experience. In fact, he had no working knowledge of the health systems and market access payers in Louisiana or any state.

25.     That same year in October, Defendant Young again chose to champion a less qualified male for a promotion when he chose a male employee over a female employee for a position as District Business Manager for Metairie. Defendant Young made this selection though the female employee had a more robust resume, including multiple Circle of Excellence awards,

and lived in the heart of the assigned geographical district and even though his team clearly lacked diversity.

26.     Again, on January 28, 2016, Defendant Young informed Plaintiff that her former male subordinates did not like reporting to a female supervisor and continued to promote the false narrative that she was to blame for their sexist beliefs, and that her management approach was defective instead of addressing the issue with-and reprimanding-the male employees who were unwilling to receive supervision from a woman.

27.     Defendant Young also made a point of stating to Plaintiff that one of her former male subordinates was "doing much better under a male leader" while he was supposed to be reviewing her performance.

28.     During 2016, Defendant Young continued to blatantly favor and develop men.  He went so far as to redraw territory boundaries to enhance male employees' performance but refused to do so for female employees.

29.     Defendant Young regularly disregarded Plaintiff's suggestions and ideas.

30.     Throughout this time, Plaintiff and her female colleagues exchanged stories of demeaning comments made to them by Defendant Young about women's appearance, intelligence and career paths. For example, when Defendant Young introduced a new medical scientific liaison, he said to a customer, "She's not just a pretty face, she's smart too." Defendant Young said about another female colleague: "Someone keeps having babies, so her career is not going to progress." The work environment became intolerable for Plaintiff both from her subordinates and her supervisor.

31.     In February 2017, Plaintiff's father died after a brief illness. When male colleagues lost a family member or a customer passed away, Defendant Young routinely shared the news

widely in person, email, or otherwise. Employees would receive flowers at the funeral and/or food. Defendant Young blatantly ignored Plaintiff's father's passing and lied to those who learned about it by saying that Plaintiff wanted to keep it private.

### Defendant Young Punishes Plaintiff More Harshly Than Men

32.     Because Plaintiff was able to grow business successfully in three new and/or underperforming channels and finished the year in the top 38th percentile in the nation, Defendant Young had no choice but to give her a positive review.

33.     Apparently frustrated with her excellent performance and anxious to sideline her, in March of 2017, Defendant Young imposed a corrective action plan on Plaintiff for lack of documentation in Defendant Novo Nordisk's supervising software system, iCoach.

34.     Meanwhile, a male colleague with worse documentation than Plaintiff had no corrective action taken against him. This colleague would later receive a promotion to specialty district manager, for which Plaintiff was rejected.

35.     Still Plaintiff refused to be forced out of a Company she had worked tirelessly for, and as she had done for many years, she worked around Defendant Young and his outlandish discrimination and disparate treatment.

36.     In June of 2017, when she successfully completed the corrective action plan he had put her on, Defendant Young stated exasperatedly, "Most people with your tenure would have packed up their tent and left if put on a plan." Upon information and belief, Defendant Young intended to force Plaintiff to quit.

37.     Defendant Young continued to reveal his sexist belief that women are not as strong as men and that he thinks they are overly emotional. For instance, Defendant Young routinely

stated that he is used to hurt feelings because he lives with four women, implying the sexist stereotype that women are overly sensitive and emotional.

**Defendant Young Stymies Plaintiff's Career**

38.    During 2018, Plaintiff applied to several other positions.  For the jobs that he controlled, Defendant Young made sure that less qualified men got every job she applied for. When Plaintiff applied for jobs that he did not control, he refused to endorse her though she was qualified for the jobs. At Defendant Novo Nordisk, it is difficult to get a promotion or a new job without the support of your manager, and upon information and belief, Defendant Young made sure to block Plaintiff's attempts. Further, the corrective action plan that Defendant Young had imposed upon Plaintiff tainted her applications and placements during realignments.

39.    In January 2018, the male colleague who had worse documentation than Plaintiff but was not placed on a corrective action plan, applied for a promotion to a specialty manager position, the Endo District Business Manager, along with Plaintiff. Defendant Young was the hiring manager. Though the male colleague had less experience than Plaintiff, poor coaching documentation, and was not a good geographical fit, he got the position while Plaintiff was placed in Baton Rouge, ninety minutes away from her home.

40.    During her performance review for 2017, held in or about February of 2018, Defendant Young repeatedly brought up her corrective action plan.

41.    At the end of her performance review for 2017, Plaintiff told Defendant Young that she was being held to a different standard, because she had seen two male employees' Icoach notes and one had significantly worse notes than Plaintiff.  Defendant Young responded that he "was holding [Plaintiff] to the standard [Defendant Young] wanted to hold [her] to."

42.    On March 27, 2018, Plaintiff interviewed and was beaten out by a male colleague for a lateral position as New Orleans District Business Manager.  Again, Defendant Young was the hiring manager. This male colleague, had significantly less experience than she did, had a challenging sales performance the prior year, and was not a good geographical fit for the district compared to Plaintiff.  On information and belief, Defendant Young rejected Plaintiff for the position in her hometown as a punitive show of power and further effort to force her out of Defendant Novo Nordisk.

43.    Later, in July 2018, Defendant Young again manipulated the sales district boundaries to make the geography more palatable for male employees, but not for either female manager.

44.    During Plaintiff's mid-year review, Defendant Young also stated that most tenured managers would have quit if they had been assigned to a territory so far away. Plaintiff responded, "If you think I would quit over that, you don't know me very well."  He also ignored the fact that she was, upon information and belief, one of his top managers for sales performance for the year.

45.    Defendant Young repeatedly made his signature comments about women being overly sensitive and emotional to public audiences, including on a September 6, 2018, conference call.

46.    Also in September, Defendant Young held a two-night, overnight Mississippi Valley Leadership team meeting at his lake house. Cabins were rented for the men and the women were made to sleep in the lake house with Defendant Young and his wife. While the meeting was taking place, Defendant Young's wife, cooked and cleaned for the meeting and even folded laundry visibly. Upon information and belief, Defendant Young believed that women should stay home and not have careers.  Also, during the meeting, Defendant Young referenced an all-female

sales team and remarked, "The fact that there are three strong women who have not killed each other is a miracle."

47.     During the meeting, Plaintiff left her seat to go to the restroom, when she returned, Defendant Young's dog was sitting in Plaintiff's chair.  Defendant Young did nothing about it, and Plaintiff was forced to humiliatingly sit on a concrete Fireplace hearth for hours. Upon information and belief, Defendant Young would not have made a man sit on concrete for hours.

## Defendant Young Tries to Drive Out Plaintiff Again

48.     Upon information and belief, because she had not quit when placed on a corrective action plan, or when he placed her in an inconvenient location, Defendant Young had been proactively trying to get Defendant Novo Nordisk's New Jersey headquarters involved. Specifically, Defendant Young was able to persuade Defendant Novo Nordisk's Compliance Department, who operated out of New Jersey, to audit Plaintiff throughout 2018.

49.     Finally, in 2018, Defendant Novo Nordisk's Compliance Department conducted an exhaustive investigation of all of Plaintiff's records-something that had never happened to her during her entire tenure at Defendant Novo Nordisk. Her expense reports, phone records, iCoach, Interface attendance, and gas records were all intensively combed through and they found two infractions-one from early 2017 and one from mid-June. At the same time, they found out that a salesperson had committed similar  infractions more than a dozen times-he received a verbal warning and Plaintiff received a written warning.

## Plaintiff Files an Official Complaint with Human Resources After Defendant Young is Named a "Cultural Champion"

50.     Plaintiff knew she could no longer survive at Defendant Novo Nordisk due to Defendant Young's repeated efforts to push her out, refusal to support her career advancement and his cultivation of a sexist work culture. Adding insult to injury, Defendant Young, despite his

constant and well-known misogynistic workplace remarks and actions, was named a Cultural Champion of Defendant Novo Nordisk.

51.     Plaintiff had previously been terrified of complaining to Human Resources, because Defendant Young openly discriminated, and no one seemed to mind and women who had previously complained about discrimination had suffered retaliation. Additionally, Defendant Young had already been investigated previously and not penalized, including for discussing erectile dysfunction medicine inappropriately and whether "customers were swingers or not."

52.     On October 11, 2018, Plaintiff spoke with Defendant Novo Nordisk Human Resources for over ninety minutes and then filed an official complaint of gender discrimination, itemizing Defendant Young's sexist language, pattern of promoting men instead of her, and the discriminatory attitudes of her subordinates.

53.     Later that month, Plaintiff applied for a promotion to a health systems role that would separate her from Defendant Young.

54.     Defendant Young, who generally avoided Plaintiff except to pick at her during conference calls, approached Plaintiff about the health systems role and smugly stated, "I talked to [the hiring manager], and I told him you could do the job, just as long as there wasn't a lot of travel."

55.     Plaintiff's heart sank because she knew that she would not get the job based on what Defendant Young had told the hiring manager.  Defendant Young smiled and walked away.

56.      During Defendant Novo Nordisk anti-discrimination trainings, managers discuss how 'ability to travel' is often considered code to say that an employee has childcare responsibilities.

57.     At the time, Plaintiff's son was 8-years old and she did not have travel restrictions.

58.     Upon information and belief, Plaintiff did not get the promotion because Defendant Young had marked her as having too many responsibilities as a Mother.

**Plaintiff is Promoted-and Given a Written Warning at the Same Time**

59.     In late October of 2018, Plaintiff was asked to attend a one-on-one business review with Defendant Young. He immediately announced "I have good news and bad news. The bad news is your investigation came to an end and you are getting a written warning for expense report violations." He then added, "The good news is, you are getting promoted to be a Senior District Business Manager."

60.     Upon information and belief, a promotion and a written warning are totally incompatible.   Additionally, even though she was punished with a written warning, Plaintiff received her full bonus, which someone with a written warning should not have been entitled to.

61.     Upon information and belief, Human Resources forced Defendant Young to give Plaintiff a promotion because the investigation that they conducted following her reports showed undoubtedly that he had been treating her disparately and refusing to promote her because of her gender. A few days later, Defendant Young called Plaintiff to read her promotion letter, which revealed her salary increase. After reading the letter he sarcastically stated, "the way this [promotion] letter is written, it almost sounds like HR gave you this raise."

62.     At no point did Defendant Young congratulate her or say anything positive about the promotion though he regularly openly praised male employees who were promoted.

**Defendant Young Obstructs Career Mobility for Plaintiff as Retaliation**

63.     In November 2018, Plaintiff interviewed for a promotion to the New Orleans Health System District Business Manager. The position was granted to a manager with significantly less experience than her, Paula Whatley. Paula Whatley lived three hours from the assigned territory

while Plaintiff lived in the heart of it. Upon information and belief, Defendant Young interfered to prevent Plaintiff from securing the position, but made sure that a woman filled the role in an effort to  disprove Plaintiff's prior charge of gender discrimination.

64.     Exasperated, endangered and desperate to get away from Defendant Young, Plaintiff applied for and was chosen as a Project Manager for a six-month sabbatical project in November 2018, so she was granted a short reprieve from Defendant Young's relentless harassment. The sabbatical involved a project called "Farmhouse to Your House," and Plaintiff worked with people in Mississippi who had received grants for a prevention program for diabetes and partnering with local farmers to promote better diets.  During that time, Plaintiff had substantial contact with the New Jersey headquarters of Defendant Novo Nordisk as the program was run out of New Jersey.

### HR Reports a No Finding of Discrimination

65.     In December 2018, Defendant Novo Nordisk  informed Plaintiff that they "found" no support for her claims of gender discrimination. Plaintiff was never questioned after her initial discussion with HR. Upon information and belief, they did not conduct a valid or thorough investigation and they took no remedial action to address any of Plaintiff's claims.  This was especially offensive to Plaintiff as Defendant Novo Nordisk had just conducted an excruciating investigation into her expenses in an effort to find anything that they could use against her, but they glossed over the obvious discrimination that she was constantly subjected to by Defendant Young.

66.     Though the "Farmhouse to Your House" sabbatical project was a tremendous success, upon information Defendant Novo Nordisk refused to extend Plaintiff's role in retaliation for her gender discrimination complaint.

67.    Plaintiff made three attempts to extend the sabbatical and prolong her relief from Defendant Young's harassment. Both the Vice President of Legal and Sales were involved in trying to extend the sabbatical, but Defendant Young nonsensically refused.

68.    When she returned, Defendant Young continued to subject her to blatantly disparate treatment.

### Plaintiff is Retaliated Against with Inadequate Compensation

69.    In January 2020, Plaintiff applied for a promotion to the New Orleans Obesity Regional Account Manager.  Inexplicably, she was not even granted a phone screen.

70.    In 2020, during her year-end review of 2019, Defendant Young was shockingly critical of Plaintiff's performance, though she had spent half the year working on an extremely successful program, had mentored a regional field trainer and lead the region during a product launch in the fall.  He completely disregarded her performance and gave her an insultingly low 1.5% salary raise and a zero percent long-term incentive compensation.  Upon information and belief, she should have been given long-term incentive compensation of 5% to 10% of her base salary. Defendant Young did not mention anything positive about her performance and upon information and belief the poor review and bonus award was retaliation because Plaintiff had reported him for gender discrimination.

71.    Upon information and belief, because Defendant Novo Nordisk had refused to act on Plaintiff's complaints of gender discrimination against Defendant Young, Defendant Young felt emboldened to continue discriminating against her and it was clear to Plaintiff that he would never be held accountable and that she had to leave if she wanted the hostile work environment to end.

72.      Upon information and belief, Plaintiff was regularly awarded below-average pay raises during Defendant Young's supervision of her regardless of her sales performances, but this review and compensation decisions were even more extreme. Upon information and belief, under Defendant Young's leadership, male comparators received higher increases than Plaintiff even when Plaintiff outperformed them, especially after she reported him for gender discrimination.

### Defendant Young Withholds Exposure and Networking Opportunities

73.      Meanwhile, Plaintiff continued to voice her concerns about the fact that Defendant Young never selected Plaintiff for any national or area committees or opportunities.

74.      After the pandemic began, Defendant Young started education workshops to be run by managers.  As leading a workshop was an excellent leadership opportunity everyone on the team wanted to run one.  Ultimately, every white male team member had an opportunity to lead a workshop.  The only team members not allowed to lead a workshop were Plaintiff, the other female on the team, and the only African American manager. Though Plaintiff was the person on the team who had the most experience in health systems, Defendant Young inexplicably selected a male to lead the health systems continuing education workshop.

### Plaintiff is Constructively Discharged

75.      After Plaintiff notified Defendant Novo Nordisk of the ongoing gender discrimination Defendant Young subjected her to an ever increasingly hostile environment and retaliated against her by disciplining her, investigating her and reducing her compensation, Plaintiff had no choice but to leave the intolerable workplace at Defendant Novo Nordisk.

76.      On May 15, 2020, she resigned from Defendant Novo Nordisk. Plaintiff walked away from her unvested long-term incentive pay, six weeks of vacation pay that she had built up

to over the years, a retiree health plan account, Defendant Novo Nordisk stock award, 401k contributions, and reimbursement of her graduate studies.

## AS AND FOR THE FIRST CAUSE OF ACTION

*(Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e et seq. against Defendant Novo Nordisk)*

77.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

78.     Plaintiff was subjected to a hostile work environment and discriminated against in the terms and conditions of her employment because of her sex.

79.     As a direct and proximate result of Defendant Novo Nordisk discrimination, she has suffered and continues to suffer severe mental anguish and emotional distress.

## AS AND FOR THE SECOND CAUSE OF ACTION

*(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e et seq. against Defendant Novo Nordisk)*

80.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

81.     Plaintiff objected to Defendant's hostile work environment and discriminatory treatment of her because of her gender.

82.     Plaintiff was retaliated against for engaging in protected activity by objecting to and complaint of sex discrimination. As a direct and proximate result of Defendant Novo Nordisk's unlawful and retaliatory termination, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

## AS AND FOR THE THIRD CAUSE OF ACTION

*(Unequal Pay in Violation of the Equal Pay Act Against Defendant Novo Nordisk)*

83.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

84.     At all times relevant to this action, Plaintiff was employed by Defendant Novo Nordisk within the meaning of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 et seq., as amended to include the Equal Pay Act, 29 U.S.C. §§ 206(d) et seq.

85.     At all times relevant to this action, Defendant Novo Nordisk was an employer within the meaning of the FLSA and the Equal Pay Act.

86.     The acts, practices and policies of Defendant Novo Nordisk, as set forth above, constitute discrimination against Plaintiff, in violation of the FLSA and the Equal Pay Act, by unlawfully paying female employees less than male employees for equal work. Upon information and belief, Defendant Novo Nordisk was aware of complaints made by Plaintiff concerning Defendant Novo Nordisk's unfair pay practices but did not rectify or investigate its unlawful pay practices.

87.     Defendant Novo Nordisk's violations of the Equal Pay Act were willful and/or reckless, entitling plaintiff to the three-year statute of limitations and liquidated damages available under the FLSA and the Equal Pay Act.

## AS AND FOR THE FOURTH CAUSE OF ACTION
*(Discrimination/Harassment – Louisiana Employment Discrimination Law Against All Defendant Novo Nordisk Inc.)*

88.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

89.     Defendant Novo Nordisk has intentionally discriminated against Plaintiff on the basis of her sex. Defendant Novo Nordisk has discriminated against Plaintiff by treating her differently from and less preferably than similarly situated male employees and by subjecting her to severe and pervasive harassment, a hostile work environment, discriminatory pay,

discriminatory denial of promotions, disparate terms and conditions of employment, and/or other forms of discrimination on the basis of her sex.

90.     Defendant Novo Nordisk created, tolerated, and condoned conduct that was severe or pervasive directed towards Plaintiff on account of her sex.

91.     Plaintiff requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant Novo Nordisk complained of herein are in violations of the laws of Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful discrimination complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

## AS AND FOR THE FIFTH CAUSE OF ACTION
*(Retaliation – Louisiana Employment Discrimination Law against Defendant Novo Nordisk Inc.)*

92.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

93.     Plaintiff objected to Defendant's hostile work environment and discriminatory treatment of her because of her gender.

94.     In retaliation, Defendant Novo Nordisk subjected Plaintiff to a series of adverse employment actions including, but not limited to, subjecting Plaintiff to severe and pervasive harassment, a hostile work environment, discriminatory pay, discriminatory denial of promotions, and disparate terms and conditions of employment.

95.     Plaintiff has been retaliated against in response to her participation in proceedings under the LEDL as well as to her opposition of Defendants Novo Nordisk's practices, which violate the LEDL.

96.     Defendant Novo Nordisk engaged in conduct materially adverse to a reasonable employee.

97.     Plaintiff requests that she be awarded all available relief including, but not limited to, a declaratory judgment that the acts and practices of Defendant Novo Nordisk complained of herein are in violations of the laws of Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful retaliation complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
*(Hostile Work Environment and Gender Discrimination in Violation of the*
*New Jersey State Law Against Discrimination Against All Defendants)*

98.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

99.     At the time Defendants constructively terminated Plaintiff's employment, Plaintiff was a woman, and therefore a member of a protected class.

100.    Upon information and belief, among other actions, Defendants constructively terminated Plaintiff because of her gender.

101.    Plaintiff was qualified to, able to, and did perform the essential functions of her position.

102.    By the aforementioned actions, Defendants subjected her to a hostile work environment and discriminated against Plaintiff in the terms, conditions, and privileges of her employment, on the basis of her gender, in violation of the New Jersey Law Against Discrimination.

103.     The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

104.     As a result of the discrimination engaged in by Defendants, Plaintiff has suffered severe damage, including deprivation of income and benefits, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation, and damage to her reputation and career.

105.     By reason of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, for back pay, reinstatement or front pay, lost benefits, pre-judgment interest, attorneys' fees and costs.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
*(Retaliation in Violation of the New Jersey State Law Against Discrimination Against All Defendants)*

106.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

107.     Plaintiff objected to Defendants' hostile work environment and discriminatory treatment of her because of her gender.

108.     In retaliation, Defendants subjected Plaintiff to a series of adverse employment actions including, but not limited to, constructive termination of Plaintiff's employment.

109.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling her to punitive damages.

110.     As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

111.    By reason of Defendants' retaliation, Plaintiff is entitled to all remedies available for violations of under the New Jersey State Law Against Discrimination, including an award of punitive damages. In addition, attorneys' fees should be awarded.

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

## PRAYER FOR RELIEF

While reserving the right to seek additional damages and plead additional causes of action as available, Plaintiff demands judgment against Defendants as follows:

A.    Injunctive relief and a declaratory judgment in favor of Plaintiff against Defendants, declaring that Defendant has violated the law by discriminating against and retaliating against Plaintiff;

B.    On all applicable causes of action, back pay and benefits and front pay and benefits, plus compensatory damages;

C.    On all applicable causes of action, an award of punitive damages in an amount to be determined at trial;

D.    All costs and disbursements of this action, including reasonable attorneys' fees; and

E.    Any other further relief the Court may deem just and proper.

Dated: New York, NY
       February 26, 2021

                                    Respectfully submitted,

                                    CHARNY & WHEELER

                                    By:/s/ *Nathaniel K. Charny*
                                    Nathaniel K. Charny, Esq.
                                    9 W. Market Street
                                    Rhinebeck, NY 12572
                                    Ofc: (845) 876-7500
                                    ncharny@charnywheeler.com

GODDARD LAW PLLC

By: */s/ Megan S. Goddard*

Megan S. Goddard, Esq.
(*Pro Hac Vice* Pending)
39 Broadway, Suite 1540
New York, NY 10006
Office: 646-504-8363
Megan@goddardlawnyc.com

*Attorneys for Plaintiff*